United States Court of Appeals,

Fifth Circuit.

No. 94-40728.

Virginia HIGHTOWER, et al., Plaintiffs-Appellees,

v.

TEXAS HOSPITAL ASSOCIATION, et al., Defendants,

Memorial Hospital Foundation of Palestine, Inc., dba Memorial Hospital, Anderson County Memorial Hospital Retirement Plan, aka The Texas Association Retirement Plan for Member Hospitals—Anderson County Memorial Hospital, Defendant-Appellant.

Sept. 28, 1995.

Appeal from the United States District Court for the Eastern District of Texas.

Before DAVIS and JONES, Circuit Judges, and COBB, District Judge.[1]

PER CURIAM:

Employees of Anderson County Memorial Hospital brought suit as class-member plaintiffs against Memorial Hospital Foundation of Palestine, Inc. to recoup approximately $750,000 of surplus funds created by the Foundation's termination of the Anderson County Memorial Hospital Retirement Plan. The district court granted partial summary judgment for the Employees on the grounds that the Foundation maintained the Plan and, therefore, any termination of the Plan was subject to the provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. sections 1001 *et seq.* The district court then certified its order granting partial summary judgment to this court pursuant to 28 U.S.C. section 1292. For the

_____

[1]District Judge for the Eastern District of Texas, sitting by designation.

reasons stated herein, we AFFIRM IN PART and REVERSE IN PART.

BACKGROUND

This action arises out of the termination of the Anderson County Memorial Hospital Retirement Plan (Plan). Anderson County (County), a governmental entity in the state of Texas, established this Plan in 1969 for the benefit of the employees of Anderson County Memorial Hospital (Hospital). The Plan remained intact until September 22, 1988, when the County leased the Hospital to the Memorial Hospital Foundation of Palestine, Inc. (Foundation). The Foundation became the employer of all Hospital employees effective on the Commencement date of the lease. Thus the employees ceased being government employees on that date. The lease also stated that the Foundation would assume responsibility for the Hospital employees' retirement plan.

The Foundation itself did not actively participate in or take control over the Plan at any time after the execution of the lease; those duties remained with the Plan administrator. Approximately six weeks after the commencement date of the lease, the Foundation terminated the existing Plan and created a new employee retirement system. At termination, the Plan had a surplus of approximately $750,000 after each beneficiary was paid. The Foundation then transferred the surplus to its operating account. The dispute centers on who is entitled to the $750,000 surplus generated by the termination of the pension fund. If the plan is governed by the Employee Retirement Income Security Act of 1974 (ERISA), the employees may be entitled to receive the surplus. On the other

2

hand, the Foundation may be entitled to keep the pension surplus benefits if the plan continues to be considered a governmental plan, exempt from ERISA coverage.

The parties agree that the Plan qualifies as an employee pension benefit plan under 29 U.S.C. section 1002(2)(A). Not surprisingly, plaintiffs contend that once the Foundation assumed control over the Hospital, all of its employees, and the Plan, the governmental plan exemptions, 29 U.S.C. sections 1003(b)(1), 1321(b)(2), no longer applied. As such, the Plan became subject to ERISA and plaintiffs assert that the Foundation terminated the Plan in violation of Titles I and IV of ERISA. 29 U.S.C. § 1001 *et seq.;* 29 U.S.C. § 1301 *et seq.* Conversely, the Foundation maintains that the Plan remained, at all times, a governmental plan exempt from ERISA coverage, and it further contends the exemptions applied even after the execution of the Hospital lease that made all of the Hospital employees Foundation employees.

The employees/beneficiaries of the Plan filed a class action suit against the Foundation. The district court partially granted plaintiffs' Motion for Summary Judgment finding that the Foundation maintained the Plan. The court held that, by maintaining the Plan, the Foundation's actions served to extinguish the governmental plan exemption, 29 U.S.C. section 1321(b)(2). The court also concluded that Title I, section 1003(b)(1), is inapplicable because of clearly expressed legislative intent to the contrary. The district court then, *sua sponte,* certified its order for appeal to this court pursuant to the provisions of 28 U.S.C. section 1292.

3

STANDARD OF REVIEW

28 U.S.C. section 1292(b) provides that this court may review controlling questions of law presented by an interlocutory appeal of a district court's partial summary judgment order. Original jurisdiction arises from the necessary analysis of the federal questions involving the interpretation and application of 29 U.S.C. sections 1002(32), 1003(b)(1) and 1321(b)(2) of ERISA. *See* 29 U.S.C. § 1132(e); 28 U.S.C. § 1331. A district court's grant of summary judgment is reviewed *de novo. Makedwde Publishing Co. v. Johnson,* 37 F.3d 180, 181 (5th Cir.1994). A *de novo* review requires that we apply the same standard as the district court when deciding whether summary judgment was properly granted. *Id.* Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the court establish that there are no genuine issues of material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-88, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986).

The Court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Services,* 504 U.S. 451, 456-58, 112 S.Ct. 2072, 2077, 119 L.Ed.2d

265 (1992); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. A party opposing summary judgment may not rest on mere conclusory allegations or denials in its pleadings. Fed.R.Civ.P. 56(e); *see also Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.), *cert. denied,* --- U.S. ----, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).

DISCUSSION

Title I of ERISA, 29 U.S.C. section 1001 *et seq.,* explains the various substantive and procedural requirements of the statute. This remedial statute was enacted to encourage the establishment and growth of private pension plans and to protect the participants in those plans. 29 U.S.C. § 1001(c); *see generally, Nachman Corp. v. Pension Benefit Guar. Corp.,* 446 U.S. 359, 361-362, 100 S.Ct. 1723, 1726, 64 L.Ed.2d 354 (1980).

Although recognized as a "comprehensive and reticulated statute,"[2] Congress excluded certain plans from ERISA coverage. *See* 29 U.S.C. § 1003(b)(1); 29 U.S.C. § 1321(b). 29 U.S.C. section 1003(b)(1) excluded governmental plans from ERISA coverage under Title I. For purposes of Title I, section 1002(32) defined "governmental plan" as "a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 29 U.S.C. § 1002(32).

ERISA also excluded certain plans from Title IV coverage. *See* 29 U.S.C. § 1321(b)(2). In relevant part, section 1321(b)(2) states that ERISA coverage does not apply to any plan "established

---

[2]*Nachman Corp.,* 446 U.S. at 361, 100 S.Ct. at 1726.

5

and maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing...."  29 U.S.C. § 1321(b)(2).

The parties agree that upon the Plan's inception, it qualified as an exempt governmental plan not subject to ERISA's coverage provisions.  Therefore, before the Foundation and the County executed the lease agreement, the Hospital's employees were covered by an exempt governmental plan as defined by Title I and Title IV of ERISA.  *See* 29 U.S.C. § 1002(32);  29 U.S.C. § 1321(b)(2).  The Foundation, however, contends that the district court erred in determining that it maintained the plan for purposes of removing the Title IV, 29 U.S.C. 1321(b)(2), ERISA governmental plan exemption.  The Foundation also asserts that the district court ignored the plain meaning of the Title I, 29 U.S.C. section 1002(32), definition of a governmental plan.  We disagree.

When courts interpret statutes, the initial inquiry is the language of the statute itself. *United States v. James,* 478 U.S. 597, 604, 106 S.Ct. 3116, 3120, 92 L.Ed.2d 483 (1986); *United States v. Barlow,* 41 F.3d 935, 942 (5th Cir.1994), *cert. denied, --- U.S. ----,* 115 S.Ct. 1389, 131 L.Ed.2d 241 (1995).  We look at the language of the statute as well as the design, object and policy in determining the plain meaning of a statute. *Crandon v. United States,* 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990);  *United States v. Mathena,* 23 F.3d 87, 92 (5th Cir.1994).  The statute must be read as a whole in order to

ascertain the meaning of the language in context of the desired goals envisioned by Congress. *See King v. St. Vincent's Hosp.,* 502 U.S. 215, 221, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991); *and see Mathena,* 23 F.3d at 92. Only if the language is unclear do we turn to the legislative history. *Toibb v. Radloff,* 501 U.S. 157, 162, 111 S.Ct. 2197, 2200, 115 L.Ed.2d 145 (1991).

*1. ERISA's Goals and Congressional Intent*

ERISA was enacted to improve the "fairness and effectiveness of qualified retirement plans in their vital role of providing retirement income." H.R.Rep. No. 93-807, 1974 U.S.Code Cong. & Ad.News pp. 4639, 4670, 4676. One of the many concerns leading up to the enactment of ERISA was the misuse of pension funds and the resulting loss of benefits enured to the employees/beneficiaries of these retirement plans. H.R.Rep. No. 93-807, 1974 U.S.Code Cong. & Ad.News at 4681. The misuse of employee retirement plans is well documented and provided the impetus for the enactment of ERISA.[3]

Congress created ERISA "to curb abuses which were rampant in the *private* pension system." *Roy v. Teachers Ins. and Annuity Ass'n,* 878 F.2d 47, 49 (2d Cir.1989) (citing H.R.Rep. No. 533, 93d

---

[3]Congressional debate over the enactment of this statute included numerous tales of pension plan failures and the plight of thousands of victims with nonexistent or insolvent retirement funds. *See, e.g.* 120 Cong.Rec. 29194 (1974) (remarks of Rep. Biaggi), *reprinted in* III Legislative History of the Employee Retirement Income Security Act of 1974 at 4639 (1976) [hereinafter cited as "Leg.His."]; *Id.* at 29195 (remarks of Rep. Thompson), *reprinted in* III Leg.His. 4665; *Id.* at 29206 (remarks of Rep. Brademas), *reprinted in* III Leg.His. 4694; *Id.* at 29213 (remarks of Rep. Ford), *reprinted in* III Leg.His. 4711; *Id.* at 29934-35 (remarks of Sen. Javits), *reprinted in* III Leg.His. 4747.

Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639) (emphasis original). Although applying ERISA to public pension plans was considered, Congress was reluctant to interfere with the administration of public retirement plans due to the resulting federalism implications. H.R.Rep. No. 533, 1974 U.S.Code Cong. & Ad.News at 4647; *See generally Alley v. Resolution Trust Corp.,* 984 F.2d 1201, 1206 (D.C.Cir.1993); *Roy,* 878 F.2d at 49; *Rose v. Long Island R.R. Pension Plan,* 828 F.2d 910, 914 (2d Cir.1987), *cert. denied,* 485 U.S. 936, 108 S.Ct. 1112, 99 L.Ed.2d 273 (1988); *Feinstein v. Lewis,* 477 F.Supp. 1256, 1261 (S.D.N.Y.1979), *aff'd,* 622 F.2d 573 (2d Cir.1980).

## *2. The Plan's Status After the Lease*

The Second Circuit has explained that Congress' goals in enacting ERISA, coupled with federalism concerns, require that "when a pension plan has been established by a governmental entity for its employees and the *governmental entity's status as employer* has not changed, the plan must be exempt from ERISA as a governmental plan." *Roy,* 878 F.2d at 50 (emphasis added). It follows that, in order to protect employees of publicly operated pension plans, once a governmental entity relinquishes responsibility for providing a retirement plan to a private entity, that private entity operates or maintains the existing pension plan, or any newly created pension plan, subject to the provisions of ERISA.

In this case, we need only look to the lease agreement to determine whether the Plan remained exempt under Title IV. The

8

lease agreement between the Foundation and the County states that "[f]ollowing the Commencement Date, Lessee [Foundation] shall assume the retirement system for hospital employees, and shall thereafter continue to offer some form of retirement benefit." Lease para. 5.4. Consequently, once the lease was executed, the Foundation assumed responsibility for the pension plan for the "hospital employees," i.e., the Foundation's employees.

According to the district court, the Foundation, therefore, assumed the maintenance of the Plan for purposes of Title IV from the date of Commencement of the lease. The Foundation argues that this language did not require it to "maintain" the Plan; that it never executed the Adoption Agreement contemplated by the Plan itself for substitution of a new employer; and it did not "maintain" the Plan in any administrative fashion, but solely took steps to terminate the Plan and capture the surplus assets. While acknowledging the Foundation's limited involvement with the Plan after the Commencement Date, we nevertheless conclude that the Foundation misperceives the implication of the Lease Agreement for the Title IV exemption. Following the Commencement Date, when the Foundation took over the hospital, the lease agreement did not require the Foundation to "maintain" the Plan, but required it to "assume" the Plan, with whatever consequence might result. More significantly, by requiring the Foundation to assume the Plan, the County gave up its role in the Plan. After the commencement date, the County no longer "maintained" the Plan, hence the Plan no longer qualified for the governmental entity exemption.

9

The Foundation urges us to take a functional view of its actions and determine that the steps it took to terminate the Plan, pay off the beneficiaries and pocket the surplus assets were not "maintenance." Terminating a plan, the Foundation argues, cannot be characterized as administration of the Plan. If the Foundation did not "maintain" the Plan, the Plan was only "maintained" by the County and never ceased to qualify for the governmental exemption. We disagree. The cases the Foundation cites hold that an employer which administers a plan owes its beneficiaries no fiduciary duty in deciding whether to terminate or amend the plan. *See e.g., Musto v. American General Corp.,* 861 F.2d 897, 912 (6th Cir.1988), *cert. denied,* 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989); *Cunha v. Ward Foods, Inc.,* 804 F.2d 1418, 1432-33 (9th Cir.1986). None of them directly interprets when a governmental entity ceases to "maintain" a plan for purposes of the exemption. But in each case, the "employer" was the company, and, like the Foundation here, decided to terminate the plan. Moreover, the decision to wind up the plan was not the only option open to the Foundation under the Lease Agreement. The County placed no strings on the Foundation's "assumption" of the Plan. The pertinent inquiry is not so much what the Foundation did as what it was permitted to do by the Lease Agreement.

Put another way, the Lease Agreement might have directed the Foundation to terminate the Plan as quickly as possible and retain any surplus assets. Alternatively, the County might have directed the Foundation through the Lease Agreement to keep hands off the

10

plan and allow the formal plan administrator, First City, Texas, to perform its duties as long as assets remained. Whether or not assumption of responsibility for the Plan might have been allocated differently between the County and Foundation so as to preserve the governmental exemption is not before us, and we do not address this issue.

It is this court's opinion that the result reached herein comports with the general goals of the statute and further protects the employees of the pension plan. To hold otherwise could well frustrate the goals, intent and purposes of ERISA. The statute was designed to prevent the known past abuses and possible future mismanagement of employee retirement plans. Government plans received an exemption from ERISA because of their ability to tax and thereby avoid the pitfalls of underfunding. *See* H.R.Rep. No. 533, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639. Once the Foundation executed the lease, the County no longer had responsibility to maintain the Plan or the ability to tax to avoid possible Plan underfunding.

This court finds that under the facts before us, once the Foundation assumed control of a previously exempt pension plan and the employees of that Plan through the Lease Agreement, that Plan lost its exempt status and became a covered plan subject to the provisions of Title IV of ERISA.

### 3. Does Title I Apply?

In the analysis of this case, we confront a common problem raised by the legislative construction of ERISA. Congress intended

to create a "governmental plan" exemption to leave the states some control over their own retirement plans. 29 U.S.C. § 1003(b)(1). Title I of ERISA, 29 U.S.C. section 1002(32), defines governmental plan as "any plan *established or maintained* for its employees by ... the government of any state or political subdivision thereof." (emphasis added).

The Foundation contends that the Plan was "established" by the County and, therefore, falls under the Title I exemption regardless of whether or not it maintained the Plan. Appellees assert, on the other hand, that a literal application of this provision would have effects contrary to the goals of ERISA and should not be condoned. Specifically, if the disjunctive criteria are employed, then a plan once established by the County would remain exempt from ERISA even after being transferred to private hands.

No federal court has yet decided to enforce the Title I exemption based on fulfillment of only one of the "established or maintained" criteria. The Second Circuit closely explored the statute and its history for a clue to Congress' intent and then veered into a finding that the Plan in that case had been both established and maintained by the governmental unit. *Rose v. Long Island R.R. Pension Plan,* 828 F.2d 910, 918-921 (2d Cir.1987); *see also Roy, supra.* The discussion in *Rose* is nevertheless helpful, for it shows that although no legislative history explains the use of "or" in the formula for the Title I exemption, Congress deliberately used conjunctive criteria in some portions of the

12

statute, e.g. the "established and maintained" requirements of Title II and IV governmental plan exemptions,[4] but not in others. *See* 29 U.S.C. § 1002(1) (definition of "welfare plan"); *id.* § 1002(16)(B) (definition of "plan sponsor"); and *id.* § 1002(40)(A) (definition of "multiple employer welfare arrangement").

The starting point of statutory construction is the text of the statute and, if it is clear, that is also the end of the construction. Here the language is clearly disjunctive. Some cases have, however, substituted "or" for "and," or vice versa, where literalism would have defeated the legislative purpose. *See United States v. Moore,* 613 F.2d 1029, 1039-40 and nn. 84-86 (D.C.Cir.1979) (collecting cases), *cert. denied,* 446 U.S. 954, 100 S.Ct. 2922, 64 L.Ed.2d 811 (1980); *but compare Crooks v. Harrelson,* 282 U.S. 55, 51 S.Ct. 49, 75 L.Ed. 156 (1930).

The exception to the rule is urged on us by appellees, but we find it unpersuasive for several reasons. First, as *Rose* pointed out, a judicially imposed conjunctive construction could also be inconsistent with the apparent legislative purpose. If a private concern transferred a plan to a government entity, the plan, not having been established and maintained by the government, would not be exempt from ERISA. *Rose,* 828 F.2d at 920. Second, Congress used both conjunctive and disjunctive requirements in various ERISA provisions, leading to the inference that the use of "or" does not always yield a plainly absurd meaning. In this case, for instance, application of "or" in no way undermines the legislative purpose to

---

[4] *See* 26 U.S.C. § 414(d) and 29 U.S.C. § 1321(b)(2).

13

protect governmental employee plan beneficiaries while exempting governmental plans from ERISA regulation. As the Foundation observes, none of the actions it took to terminate and wind up the Plan implicate the Title I provisions.

On balance, we conclude that applying "or" in the text of the Title I exemption effects no such absurd result that we should override the language Congress chose. Consequently, we must reverse this aspect of the district court's decision.

CONCLUSION

For the foregoing reasons, in this case we find that once the Foundation executed the lease agreement with the County, assumed control of the pension plan and became the employer of the Hospital's employees, the governmental exemption Title IV no longer applied, and the Plan was subject to Title IV. On the other hand, because the County established the Plan, the Plan remained exempt under Title I even after the County ceased to "maintain" the Plan by transferring control to the Foundation.

The summary judgment granted by the district court is therefore AFFIRMED IN PART and REVERSED IN PART.

COBB, District Judge, concurring in part and dissenting in part:

I concur with analysis and holding of the court concerning Title IV and dissent from majority's Title I analysis and holding.

It is true that no federal court has yet decided to enforce the Title I exemption based on fulfillment of only one of the "established or maintained" criteria. However, at least three circuits have recognized that a literal reading of the language in

14

Title I's governmental exemption leads to very anomalous results. *See Alley,* 984 F.2d at 1205 & n. 11; *Silvera v. Mutual Life Insurance Company of New York,* 884 F.2d 423, 425-426 (9th Cir.1989); *Rose,* 828 F.2d at 919-920.

I agree the starting point of statutory construction is the text of the statute and, if Congress' intent is clear in the plain language of the statute, that is also the end of the construction. Here the plain language is disjunctive but Congress' intent is certainly less than lucid. Interpreting section 1002(32) either in the disjunctive or conjunctive presents serious problems when considered with the general purpose of the governmental exemption and the statute as a whole.

*Rose* explains why the use of conjunctive or disjunctive construction for Title I's governmental exemption provisions leads to results inconsistent with the apparent legislative purpose of ERISA. *See Rose,* 828 F.2d at 919-920. The court recognized the difficulty in interpreting section 1002(32). It noted that adopting the literal meaning of "established or maintained" under section 1002(32) would enable a private entity, lacking the government-backed security of taxing powers, to take over a governmental plan without subjecting itself to the requirements of ERISA. *Id.* at 919.

Alternatively, if the "established and maintained" language of section 1321(b)(2) was adopted, a governmental entity could not take over a private pension plan and qualify for an ERISA exemption. *Id.* at 920. Both interpretations lead to results

15

contrary to the stated goals of the statute. Although the court did not reach the merits of this statutory quandary, *Rose* recognized that "the status of the entity which currently maintains a particular pension plan bears more relation to Congress' goals in enacting ERISA and its various exemptions, than does the status of the entity which established the plan." *Id.* at 920; *see also Alley v. Resolution Trust Corp.,* 984 F.2d 1201, 1205 n. 11 (D.C.Cir.1993) (adopting a similar test based on "the core concern for ERISA purposes—the nature of an entity's relationship to and governance of its employees.") The *Alley* court also used this test to determine whether the Federal Asset Disposition Association was an "agency or instrumentality" for purposes of Title I's governmental exemption. (citing *Rose,* 828 F.2d at 918); *and see Silvera v. Mutual Life Insurance Co. of New York,* 884 F.2d 423, 425-426 (9th Cir.1989) (Holding " "Congress, in exempting governmental plans, was concerned more with the governmental nature of public employees and public employers than with the details of how a plan was established or maintained.' ") (quoting *Rose,* 828 F.2d at 920 (quoting *Feinstein,* 477 F.Supp. at 1262)).

As stated above, the legislative history and purpose of this statute is improve the "fairness and effectiveness of qualified retirement plans in their vital role of providing retirement income." H.R.Rep. No. 93-807, 1974 U.S.Code Cong. & Ad.News 4670, 4676. The main concern of Congress was to create legislation that would curb the misuse of pension funds and the resulting loss of benefits which had enured to the employees/beneficiaries of private

16

retirement plans.  H.R.Rep. No. 93-807, 1974 U.S.Code Cong. & Ad.News at 4681;  *and see Roy,* 878 F.2d at 49 (citing H.R.Rep. No. 533, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639).

With the prevailing goals of ERISA at issue, the lease executed between the Foundation and the County should be dispositive.  Paragraph 5.3 of the lease provides that "[e]ffective the Commencement date, Lessee [Foundation] shall assume sole responsibility for hiring, promotion, discharge, setting of wage scales and rates, supervision of employees, and, without regard to when they arise, workers' compensation claims, employee grievances, and disciplinary actions."  Without question, the execution of this lease made the Foundation the employer of the Hospital employees.[1]

As such, the governmental status of the pension plan has changed.  Once the Foundation executed the lease, thereby assuming responsibility for the employees and the Plan, the Plan should have ceased to be a governmental plan for purposes of Title I.  The lease specifically called for the Foundation to assume the status of employer of the hospital employees and assume responsibility for their pension plan.  The Hospital employees could then no longer be considered governmental employees.  For these reasons, the Plan could no longer remain exempt from the Title I provisions of ERISA.

Being persuaded that the Second Circuit's analysis in *Rose,*

---

[1]Paragraph 5.2 also provides that "[l]essee [Foundation] shall supervise, manage and operate the hospital and its financial and fiscal affairs in a manner consistent with all applicable federal, state, and local laws and ordinances and in accordance with the terms of this agreement."

that "the status of the entity which currently maintains a particular pension plan bears more relation to Congress' goals in enacting ERISA and its various exemptions, than does the status of the entity which established the plan" is more in keeping with the purposes of ERISA, I would hold that the use of "or" in Title I does not, in this case, exempt the Plan before us from ERISA. *Rose,* 828 F.2d at 920. At least two other circuit courts have also recognized the *Rose* analysis quoted here and found it a better test for governmental exemption status under Title I. *Alley,* 984 F.2d at 1205 & n. 11; *Silvera,* 884 F.2d at 425-426.[2]

In the case *sub judice,* the Foundation assumed control over the Plan and the Hospital employees when it executed the lease. Reviewing the Foundation's status with respect to the Plan and its employees does more to implement Congress' goals in enacting ERISA and its various exemptions, than does the County's status as the governmental entity which "established or maintained" the Plan. I would hold the governmental exemption under Title I for this Plan ceased to applicable once the Foundation executed the lease and assumed control over the Plan. For these reasons, I respectfully dissent from the court's holding reversing the district court's holding as to Title I.

---

[2]The Supreme Court has also recognized that the statute does not clearly set out ERISA's coverage provisions. *See Massachusetts v. Morash,* 490 U.S. 107, 115, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98 (1989) (finding it necessary to "look to the provisions of the whole law, and its object and policy" in determining the scope of employee welfare benefit plans under section 1002(3)).