h CARAWAY, J.
This suit concerns a contest between the employee spouse and her husband’s succession over the right to benefits from her public pension. Prior to the husband’s death, while retirement benefits were being paid, the parties obtained a consent judgment ending their community property regime and ordering separation of property. Thereafter, the parties partitioned the pension benefits immediately prior to the husband’s death. The trial court awarded the husband’s succession a one-half interest in the pension, and the surviving spouse appeals. Finding that the husband contractually agreed to the retirement plan for payment of full benefits to his spouse for her lifetime, we reverse the trial court’s ruling.

Facts

This appeal arises from a dispute over the partition of the public pension benefits of Patricia Peyton Carter (“Patricia”) which she and her husband, James R.S. Carter (“James”), obtained in the form of a consent judgment before James’s death. James and Patricia were married in 1974 in Washington, a community property state. They resided there until 1995, when the couple relocated to Shreveport. Patricia worked for the State of Washington, until her 1992 retirement.
On June 11, 1992, the Carters signed an Application for Early Retirement (the “Application”) with regard to Patricia’s Washington public pension, in which Patricia was listed as the plan member and James was designated the beneficiary. The Application required the Carters to direct the Washington Department of Retirement Systems (the “Department”) by | ¡>,choosing between four retirement payment options — the standard allowance, two joint and last survivorship allowances, and a COLA option. The Carters selected the standard allowance which was described on the Application as follows:
STANDARD ALLOWANCE — Provides the full benefit amount for my lifetime. No retirement payments will be made to my beneficiary after my death except the balance of any accumulated contributions in excess of retirement benefits previously received, which shall be paid in a lump sum.
The evidence indicates that the public pension plan was a defined benefit plan. Benefits were not based upon the amount of Patricia’s monetary contributions, but upon her years of employment and average final compensation. Following the execution of the Application, Patricia retired in September 1992.
After their move to Louisiana in 1995, James and Patricia never separated and remained married. Nevertheless, in 1997, James petitioned the trial court for a separation of property decree under La. C.C. art. 2374. Patricia filed an answer and reconventional demand, which denied James’s allegations of mismanagement of their community property, but sought a separation of the parties’ community property. As a result of this action, a consent judgment signed by James and Patricia on May 29, 1998, purportedly terminated the legal matrimonial regime between the parties, retroactive to April 11,1997.
Pursuant to La. R.S. 9:2801, the parties next undertook proceedings to partition the community. Thereafter, in a second consent judgment partitioning their community property dated August 28, 1998 (hereinafter lathe “Partition”), the parties separated Patricia’s retirement benefits, as follows:
I.) Patricia Peyton Carter hereby receives and James R.S. Carter hereby grants, bargains, sells and conveys unto her with full guarantee of title and with complete transfer and subro-*1239gation of all rights and actions of warranty against all former proprietors of the property herein conveyed unto her all of his right, title and interest in and to the following described property:
[[Image here]]
B) MOVABLE PROPERTY
[[Image here]]
3.) An undivided one-half interest in that certain Washington State Retirement/Pension, Public Employees Retirement System account standing in the name of Patricia A. Peyton SSN: 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 earned through her employment -with University of Washington, Washington Sea Grant program which division is effective September 1,1998;
[[Image here]]
II.) James R.S. Carter hereby receives and Patricia Peyton Carter hereby grants, bargains, sells and conveys unto him with full guarantee of title and with complete transfer and subro-gation of all rights and actions of warranty against all former proprietors of the property herein conveyed unto him all of her right, title and interest in and to the following described property:
B) MOVABLE PROPERTY
[[Image here]]
3.) A undivided one-half interest in that certain Washington State Retirement Pension, Public Employees Retirement/Pension, Public Employees Retirement System account standing in the name of Patricia A. Peyton SSN: 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 earned through | ¿her employment with the University of Washington, Washington Sea Grant program which division is effective September 1, 1998;
[[Image here]]
Moreover, pursuant to the Partition, James likewise received various personal items from the former matrimonial domicile, including furniture, bedding, kitchenware, as well as full ownership in his U.S. Social Security Pension, a British Old Age Pension, a Canadian Old Age Pension, $65,000 cash, the funds located in three separate checking accounts, and all insurance policies insuring his life. Patricia also received ownership of specific assets of the former community.
The Partition likewise recited the following language, which purported to relieve each party of any future reimbursement claims:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the parties hereto do hereby fully acquit, release, discharge and relieve each other from any and all claims whatsoever of any nature or kind by their own separate and paraphernal estates, against the former community of acquets and gains existing between the parties hereto and being partitioned hereby, and against each other’s separate and para-phernal estates, hereby laying at rest forever, finally and for all future purposes, any and all claims that they had, do have or may have against each other arising out of or existing during their marriage with respect to the use, disposition, sale or transfer of any of their separate and paraphernal funds or property, or the use of their community funds on or affecting same, whether same was by purchase, improvement or otherwise.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that each party hereto is receiving a fair, just and *1240equal portion of the community of ac-quets and gains.
[[Image here]]
|,James died on October 3, 1998, only three days after Patricia sent the first check to him, representing one-half of her pension benefits pursuant to their August 28th Partition. James left all of his property to his three children from a former marriage by his last will and testament. After James’s death, Patricia made no payment of one-half of her retirement benefits, $725.41 per month, to his succession, which was opened as a separate proceeding in the First Judicial District Court (hereinafter the “Succession”).
In February 1999, the executor of the Succession intervened in this proceeding seeking to enforce the Partition judgment and to obtain possession of the pension benefits allegedly due to the Succession. More specifically, the Succession’s petition stated, in part:
“6.
Petitioner shows that all parties hereto intended to prepare and have executed a Qualified Domestic Relations Order instructing the Washington State Department of Retirement Systems to send one check to each of the parties hereto monthly in an amount equal to one-half of the monthly retirement proceeds ... identified as item 1(B)(3) and 11(B)(3) of the Partition judgment.”
“12.
Petitioner has been informed by Washington State Department of Retirement Systems through Beverly Wells that the department will not honor a judgment partitioning the asset at issue or a Qualified Domestic Relations Order since one of the spouses.has died and that any portion of the pension at issue owned by Mr. Carter’s estate will have to be obtained directly from the defendant in rule.”
Patricia responded to the petition and later filed a petition to nullify the judgment of partition. Alternatively, Patricia asked the trial court to find |fithat the pension benefits were community property, and thus subject to the legal usufruct granted to a surviving spouse.
The matter went to trial on November 17, 2000. The trial court denied Patricia’s allegations that legal defects rendered the two consent judgments null, and also ruled that she was not entitled to a surviving spouse’s usufruct. The trial court ruled that the Partition was a transaction and compromise, which is not subject to attack on any of the legal grounds Patricia urged. Lastly, the court upheld the provisions of the Partition and ruled the pension benefits as a heritable asset of the Succession, which could legally be transferred by James’s last will and testament. More specifically, the trial court’s judgment reads, in pertinent part:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein decreeing that the consent judgment under consideration herein conveying unto Mr. Carter a one-half interest in the retirement account in question conveyed to him an ownership right which he possessed at the time of his death and which, therefore, could be disposed of by him at the time of his death by testamentary directive causing said ownership right to pass to the designated testamentary beneficiaries of the estate of James R.S. Carter.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein decreeing that Patricia Peyton Carter, defendant, has an on going obligation to pay to the estate of James R.S. Carter, plaintiff, one-half *1241of the monthly pension benefits otherwise paid to her and further decreeing that if Patricia Peyton Carter, defendant is paid all of any months pension benefits she owes and is obligated to pay the estate of James R.S. Carter or the persons or entities designated in any subsequent judgment of possession one-half of the sum received by her effective as of October 1,1998 and continuing until said such time as the state of Washington begins paying one-half of each monthly pension benefit to the estate of James R.S. Carter or any persons or entities designated to receive said payment in any subsequent judgment of possession.
* * *
l7The trial court further ordered Patricia to forward James’s one-half share of the pension benefits to his estate, retroactive to October 1,1998.
At issue in this appeal is the succession’s right to the distribution of benefits under Patricia’s public pension plan. Patricia argues that James’s one-half interest returned to her in full upon his death, while the Succession contends that the proceeds should be included in James’s patrimony and devolve in accordance with James’s will to his daughters of a prior marriage. Patricia further argues that the trial court’s judgment is legally flawed, because it goes against the laws and public policy of the State of Louisiana and the State of Washington.

Discussion

I.
After a request by this court, the parties have reviewed the conflict of laws provisions of the Civil Code. La. C.C. arts. 3515 and 3526. Neither party makes an assertion that the Washington substantive law has any application to the classification and distribution of the disputed pension plan. Therefore, the Louisiana law of community property is applicable. Likewise, our substantive law governing successions and the transmission of pension rights is applicable to the resolution of this dispute over the property of the deceased Louisiana domiciliary. Nevertheless, Patricia did introduce as evidence at trial the provisions of the Washington law governing the relationship and obligations between the Department of Retirement Systems and the Carters. Those provisions, insofar as they |sdefined the disputed incorporeal right, are pertinent for the resolution of this case.
Additionally, we note that the retirement benefits at issue are not subject to the federal law embodied in ERISA, because Patricia participated in a public retirement fund sponsored by the State of Washington. See 29 U.S.C.A. §§ 1002(32), 1003(b)(1); Hightower v. Texas Hosp. Ass’n, 65 F.3d 443 (5th Cir.1995), rehearing denied, 73 F.3d 43 (5th Cir.1996).
II.
In argument and in some of her assignments of error, Patricia attacks the validity of the two consent judgments as having not been executed in accordance with Louisiana law. The first judgment purportedly declared the cessation of the community property regime and established a regime of separation of property pursuant to La. C.C. art. 2374. The second judgment purported to partition the parties’ properties that had formerly comprised the community. See La. C.C. art. 2369.8 and La. R.S. 9:2801. From our review of those consent judgments and the claims of the parties which were compromised in those judgments, we have not determined that the rulings were improper and should be nullified. On the other hand, Patricia’s arguments concerning the nature of the public pension property right which was included in the partition, the effect of the partition, *1242and the absence of rights of the Succession to this disputed property have merit.
The disputed object of the Carters’ Partition was Patricia’s pension plan, which the Carters recognized as their former community property. The pension plan benefits had been in pay status for years prior to the | partition based upon the Carters’ selection of a particular payout annuity. The Partition simply stated that each spouse would be entitled to an “undivided one-half interest” in Patricia’s pension. This disputed object of the partition is an incorporeal right. La. C.C. art. 461. Robinson v. Robinson, 99-3097 (La.1/17/01), 778 So.2d 1105, rehearing denied, 99-3097 (La.3/16/01). The obligation of the State of Washington to the plan member and a non-employee spouse is the Carters’ incorporeal right in dispute. This defined benefit pension plan is a product of the Washington statutory law which creates a type of public contract between the Department of Retirement Systems and the parties.
In 1992, while the Carters were domicili-aries of Washington and living under the community property regime of that state, both spouses executed the Application for Early Retirement and contractually directed the Department to pay the “standard allowance,” providing the full annuity benefit to Patricia for her lifetime. By this election, James chose to receive no surviv- or benefits should Patricia die first. James’s protections for the value of his share of Patricia’s community property contribution to the system were two-fold. First, James retained a right to share in a lump sum payment upon Patricia’s death to the extent there remained any balance of accumulated contributions in excess of retirement benefits previously received.1 Additionally, in the event of the subsequent termination of the community by the parties prior to a death, the following provisions of h (Washington law would allow James to obtain an assignment of his share of Patricia’s retirement benefits:
RCW 41.50.500 Mandatory assignment of retirement benefits — Definitions. (Effective until September 1, 2000). Unless the context clearly requires otherwise, the definitions in this section apply throughout RCW 41.50.500 through 41.50.650, 41.50.670 through 41.50.270, and 26.09.138.
(1) “Benefits” means periodic retirement payments or a withdrawal of accumulated contributions.
[[Image here]]
(3) “Dissolution order” means any judgment, decree, or order of spousal maintenance, property division, or court-approved property settlement incident to a decree of divorce, dissolution, invalidity, or legal separation issued by the superi- or court of the state of Washington or a judgment, decree, or other order of spousal support issued by a court of competent jurisdiction in another state or country, that has been registered or otherwise made enforceable in this state.
[[Image here]]
(5) “Obligee” means an ex spouse or spouse to whom a duty of spousal maintenance or property division obligation is owed.
(6) “Obligor” means the spouse or ex spouse owing a duty of spousal maintenance or a property division obligation.
*1243[[Image here]]
(8) “Property division obligation” means any outstanding court-ordered property division or court-approved property settlement obligation incident to a decree of divorce, dissolution, or legal separation.
[[Image here]]
(10) “Withdrawal of accumulated contributions” means a lump sum payment to a retirement system member of all or a part of the member’s accumulated contributions, including accrued interest, at the request of the member including any lump sum amount paid upon the death of the member.
[[Image here]]
RCW 41.50.670 Property division obligations — Direct payments pursuant to court order. (Effective until September 1, 2000).
(1) Nothing in this chapter regarding mandatory assignment of benefits to enforce a spousal maintenance obligation shall abridge the right of an obligee to direct payments of | t retirement benefits to satisfy a property division obligation ordered pursuant to a court decree of dissolution or legal separation or any court order or court-approved property settlement agreement incident to any court decree of dissolution or legal separation.... The department shall pay benefits under this chapter in a lump sum or as a portion of periodic retirement payments as expressly provided by the dissolution order. A dissolution order may not order the department to pay a periodic retirement payment or'lump sum unless that payment is specifically authorized under the provisions of chapter 2.10, 2.12, 41.26, 41.32, 41.34, 41.40, or 43.43 RCW, as applicable.
[[Image here]]
RCW 41.50.700 Property division obligations — Cessation upon death of ob-ligee or obligor — Payment treated as deduction from member’s period retirement payment.
(1) The department’s obligation to provide direct payment of a property division obligation to an obligee under RCW 41.50.670 shall cease upon the death of the obligee or upon the death of the obligor, whichever comes first. However, if an obligor dies and is eligible for a lump sum death benefit, the department shall be obligated to provide direct payment to the obligee of all or a portion of the withdrawal of accumulated contributions pursuant to a court order the complies with RCW 41.50.670.
(2) The direct payment of a property division obligation to an obligee under RCW 41.50.670 shall be paid as a deduction from the member’s periodic retirement payment....
Patricia also cites the Washington statute dealing with the restricted assignability of public employees’ retirement benefits. RCW 41.40.052. The provision states that a right to a pension, retirement allowance, or the return of contributions “shall not be subject to execution, garnishment, attachment, the operation of bankruptcy or insolvency laws, or other process of law whatsoever and shall be unassigna-ble,” with the exception for “a court order directing the department of retirement systems to pay benefits Indirectly to an obligee under a dissolution order as defined in RCW 41.50.500(3) which fully complies with RCW 41.50.670 and 41.50.770.”
*1244This Washington State public pension plan contains two important features defining the Department’s obligations to the Carters and thereby limiting their rights to this incorporeal property. First, under the “standard allowance” option and non-assignability provisions of the plan, the only obligation of the Department in the event of death arises upon Patricia’s death, and not James’s, and only for any remaining accumulated contributions by Patricia in excess of benefits previously paid. Second, the state schedule of benefits is not tied to prior community property contributions so that the stream of benefits cannot be considered as the return of the principal of those contributions and interest, dividends or capital gain earned from those contributions.
These features of the public pension plan, which was the object of the parties’ partition, are significant for the initial inquiry into the meaning of the parties’ language of conveyance, exchange or acknowledgment within the Partition.2 That assignment and acknowledgment, recognizing each spouse’s “undivided one-half interest” in this former community property pension, could address only the assignment of the benefits to both spouses during their lifetimes pursuant to a “dissolution order” for a property division. This was the only assignment between the spouses which was Impermissible under the Washington law governing the pension plan. Likewise, since the Washington pension benefits are not derived from a fund of Patricia’s prior community contributions, the Partition did not assign to James an undivided one-half interest in a fund of money or other investment assets which James could have withdrawn from the Department, dealt with as his separate property, and bequeathed to his heirs.
By their contract of partition, the parties could not and did not cause James’s incorporeal right and the Department’s corresponding obligation to be heritable property owed by the Department to the Succession. The Washington statutory governance of the pension plan relationship between the Department and the Carters prohibits payment of these benefits to James’s heirs. Likewise, the Partition did not specify a personal obligation on Patricia’s part to pay one-half of the pension benefits to James’s heirs upon his death.3
In summary, from our review of the Washington statutes governing the pension plan and the language of the Partition, we do not find that the parties’ agreement to partition, which was confirmed as a consent judgment, contractually addressed and decided the issue underlying this dispute. Despite the trial court’s double ruling4 in favor of the Succession | ^concerning that issue, we choose to artic*1245ulate the question presented by this litigation as follows:
Whether one-half of the pension benefits owed by the Department is property of the Succession, and if not, whether Patricia owes a personal obligation of accounting to the Succession to reimburse the Succession for one-half of the pension benefits she will receive until her death.
This important question regarding Patricia’s pension, however, would always be present under Louisiana succession and community property law, regardless of whether James died with or without the execution of the Partition. T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La.1975)(on rehearing). Therefore, with the Louisiana law applicable to govern the parties’ rights to Patricia’s Washington pension plan, the above question must be considered in light of T.L. James and its progeny.
III.
In its seminal ruling in T.L. James, supra, the Louisiana Supreme Court decided that an employee’s contractual pension right is not a gratuity but an earned property interest. Hare v. Hodgins, 586 So.2d 118 (La.1991). Therefore, under Louisiana’s community property law, a pension right derived from a spouse’s employment during the existence of the marriage is a community asset subject to division upon dissolution of the community. La. C.C. art. 2338; Hare, supra at 122. Consequently, the jurisprudence has held that regarding pensions, the non-employee spouse is entitled to be recognized as the owner of one-half of the value attributable to the pension or deferred compensation right earned by the employee spouse during the existence of the marriage. Sims v. Sims, 358 So.2d 919 (La.1978).
11fiUnlike the Sims and Hare rulings which followed T.L. James and dealt with disputes between the spouses, T.L. James involved the death of the employee/owner of the pension right. Therefore, the case on rehearing addressed the significant issue of the devolution of the pension owner’s rights upon his death. The court ruled that the contractual designation of a successor to the ownership of the pension and its benefits can be honored in Louisiana, even though the designation is not in the form of a donation, either inter vivos or mortis causa. The court said:
In our original opinion, however, we went further: We held that the contractual designation of a beneficiary was a complete nullity which transferred no property interest to the beneficiary, because it did not meet the requirements of the civil code for a valid testamentary disposition nor for a valid donation inter vivos. Upon reconsideration, for reasons to be elaborated, we now conclude that, so long as the contractual devolution of the decedent’s interest to the beneficiary does not infringe upon the legitime of a complaining forced heir nor upon the community ownership of a complaining spouse, no prohibition of law prevents the courts from recognizing the contractual rights of the beneficiary to the ownership of the proceeds (so acquired by reason of the contract between the deceased employee, his employer, and the respective plans).
T.L. James, supra at 853-854.
The allowance for the contractual devolution of pension rights established in T.L. James has gained further approval, implicitly, by the 1981 legislative enactment of La. C.C. art. 1505(D), which excludes pension benefits from the active mass calculation of a succession for purposes of forced heirship. Section D of the article provides:
*1246Employer and employee contributions under any plan of deferred compensation adopted by any public or governmental employer or any plan qualified under Sections 401 or 408 of the Internal Revenue Code, and any benefits payable by reason of death, disability, retirement, or termination of employment launder any such plans, shall not be included in the above calculation, nor shall any of such contributions or benefits be subject to the claims of forced heirs. However, the value of such benefits paid or payable to a forced heir, or for the benefit of a forced heir, shall be deemed applied and credited in satisfaction of his forced share.
Although the deceased spouse in T.L. James was the employee/owner of the pension, a non-employee spouse is no less an owner and may also, before death, contract with the third party pension provider to direct the devolution of the pension. In Succession of Heuszel v. Woldow, 99-370 (La.App. 3d Cir.11/3/99), 747 So.2d 181, unit denied, 1999-3363 (La.2/4/00), 754 So.2d 230, the non-employee spouse died and his daughter challenged her stepmother’s right as the employee spouse to receive pension benefits from the Teacher’s Retirement System of Louisiana. Upon Mrs. Heuszel’s retirement six years before her husband’s death, the Heuszels selected a joint life annuity option. Denying the daughter’s claim to her father’s interest in the pension, the appellate court affirmed the trial court’s conclusion that “the retirement plan selected by the Heuszels was a contractual agreement, personal to the parties who signed the agreement, and not heritable.” Id.
The Heuszel ruling therefore finds its support in the T.L. James ruling which allows the “contractual devolution” of pension funds. Yet, unlike the T.L. James dispute, Mr. Heuszel’s contractual acknowledgment before his death of his wife’s status as the sole beneficiary of the pension fund obviously did not infringe upon her community ownership. Moreover, the Heuszel court emphasized the Louisiana statutory scheme for the public pension which, like the Washington statutory scheme, affords no inheritance | fright to the heirs of a non-employee spouse. This reflects legislative policy that public pensions are to support elderly employees and, in conjunction with community property considerations, their non-employee spouses in their retirement. As a corollary, public pension benefits are not legislatively intended for heirs or unrelated persons or entities who happen to be legatees of a non-employee spouse.
From our review of the Application executed by the Carters in 1992, we find that James expressly consented to a defined retirement plan providing for the payment of full benefits to Patricia for her lifetime. While James did not contractually relinquish his right to claim his community property interest in the pension benefits during his lifetime in the event of the termination of the marriage or separation of their community property, he did acknowledge that, upon his death, the benefits would be paid solely to Patricia for her lifetime. Therefore, James’s receipt of “an undivided one half interest” in the pension through the Partition is not inconsistent with his execution of the Application and did not change his prior directive to the Department regarding the payment of benefits after his death. Through the Application, James agreed that his ownership rights in the pension would serve for the benefit of Patricia during her retirement, and under the ruling in T.L. James, such contractual directive concerning a pension right may be honored upon his death.5
*1247| isConclusion
For the reasons set forth above, we find that the disputed pension is not property of the Succession of James R.S. Carter, and that the trial court’s judgment recognizing the Succession’s ownership was in error. Additionally, the trial court’s judgment against Patricia Peyton Carter imposing an obligation to pay to the Succession one-half of the monthly pension benefits received during her lifetime is reversed. Costs of this appeal are assessed to appellee.
REVERSED.

. There was no evidence presented at trial indicating that a balance of accumulated contributions remained and could be withdrawn from the pension plan in the event of Patricia’s death.

.The Succession argues against consideration of any extrinsic evidence concerning the Carters' intent which might vary the express wording of the Partition assigning "an undivided one-half interest.” Patricia insisted that the extrinsic evidence showed that the Partition was not intended to alter her right to receive all benefits in the event James died, and she testified and offered James’s 1997 letter to her discussing their separation of property, in which he arguably acknowledged her right to the Washington pension benefits in the event of his death.

. Under La. R.S. 9:2801(A)(4)(d), the partition suit between the parties allowed the court to order an equalizing payment obligation on Patricia. Their compromise for the consent judgment of partition imposes no personal obligation upon Patricia.

. As set forth above, the trial court's judgment declared the Succession’s ownership of one-half of the pension benefits, and additionally ordered judgment against Patricia as a personal obligation to pay one-half of the benefits she received in the event the Department, which was not a party to this suit, does not recognize the Succession's ownership.

. Since we conclude that James provided for the contractual devolution of his rights in the disputed pension, we do not find applicable former Civil Code Article 890.1, now La. R.S. 9:1426. Additionally, we note that the Succession argued against the application of this provision since the community terminated prior to James's death.