FORTUNATO P. BENAVIDES, Circuit Judge:
This appeal is from the grant of partial summary judgment in favor of the United States in a qui tam action under the False Claims Act. The two relators filed the instant suit against their former employers, alleging that the defendants had defrauded the Government by filing tens of millions of dollars in fraudulent Medicare and Medicaid claims. Prior to the filing of this qui tam suit, the Government had criminally prosecuted the instant defendants for fraud and obtained a multi-million dollar award of restitution. The sole issue on *159 appeal is a question of first impression in the Fifth Circuit. The question is whether the district court properly held that, because there was no qui tam complaint in existence at the time the Government pursued criminal charges against the defendants, the criminal proceeding did not constitute an “alternate remedy” under 31 U.S.C. § 3730(c)(5), and thus, the relators had no right to share in that recovery. We agree with the district court and hold that because there was no qui tam action pending at the commencement of the restitution proceeding, the restitution proceeding does not constitute an alternate remedy under the statute. We therefore affirm the partial summary judgment and remand for further proceedings.
I. BACKGROUND
The two relators, Samuel Babalola and Kayode Samuel Adetunmbi, had practiced medicine in Nigeria before immigrating to the United States. The relators worked as medical assistants for the defendants, Dr. Arun Sharma and Dr. Kiran Sharma, at the defendants’ two medical clinics located in Baytown and Webster, Texas. During their employment, the relators witnessed the Sharmas filing fraudulent claims with Medicare, Medicaid, and private insurance companies. In 2007, based on their observations, the relators drafted an anonymous letter setting forth details of the fraudulent claims the Sharmas submitted to Medicare, Medicaid, and various private insurance companies. The relators sent this letter to various government agencies.
Subsequently, the Government conducted a criminal investigation with respect to the allegations in the letter. On July 16, 2009, a federal grand jury indicted the Sharmas, charging them with 64 counts of conspiracy, healthcare fraud, and other federal crimes. Thereafter, in the course of the investigation, the Government contacted the relators and asked them whether they had worked for the Sharmas and had any information with respect to the allegations of fraud in indictment. The relators met with the representatives from the FBI, DEA, and the United States Attorney’s Office regarding the allegations. The relators agreed to testify at trial against the Sharmas. However, on April 26, 2010, the Sharmas both pleaded guilty to conspiracy to commit healthcare and mail fraud and one substantive count of health care fraud in violation of 18 U.S.C. §§ 371 and 1347. In February 2011, at their sentencing, the district court ordered the Sharmas to pay over $43 million in restitution to Medicare, Medicaid, and certain private insurers. The Sharmas appealed, and this Court vacated the restitution order and remanded the case to the district court for a recalculation of restitution because the “amount exceeded the insurers’ actual losses by millions of dollars.” United States v. Sharma, 70S F.3d 318, 327 (5th Cir.2012), cert. denied, — U.S. -, 134 S.Ct. 78, 187 L.Ed.2d 30 (2013).
Meanwhile, on November 17, 2011, while the Sharmas’ direct criminal appeal was pending, the relators filed the instant suit against the Sharmas under both the False Claims Act (“FCA”), 31 U.S.C. 3729 et seq., and the Texas False Claims Act based on the same fraudulent claims that the relators had set forth in the anonymous letter (and also the basis of the Sharmas’ criminal convictions). Both the Government and Texas[1] declined to intervene in the qui tam action. See 31 U.S.C. § 3730(b)(2). Pursuant to statute, the complaint remained under seal until the district court ordered that it be served on the defendants. Id.
*160 On May 1, 2012, the relators filed a motion to compel depositions of certain Department of Justice employees. In this motion, the relators asserted that “discovery on the issue of relator’s share is proper at this time because the only dispute before the Court is whether relators are entitled to a share of the criminal forfeiture previously obtained by the United States from Defendants as an alternate remedy under 31 U.S.C. § 3730(c)(5).”
The Government filed a motion for partial summary judgment, arguing that, as a matter of law, the relators were not entitled to a share of the restitution that was awarded in the Sharma’s criminal case pri- or to the filing of the instant FCA action. The district court granted the motion, holding that because there was no valid FCA complaint in existence at the time the restitution was awarded to the Government, the criminal proceeding did not constitute an “alternate remedy” under 31 U.S.C. § 3730(c)(5), and thus, the relators had no right to share in that recovery. The relators then filed a motion to certify a permissive interlocutory appeal, and the district court granted it. 28 U.S.C. § 1292(b). This Court subsequently granted the relators leave to appeal from the interlocutory order on April 5, 2013.
On June 6, 2013, in the criminal proceedings, the district court resentenced the Sharmas, and ordered restitution in the amount of $37,636,436.39. The Sharmas appealed the amended judgment, including the order of forfeiture and restitution, and that appeal is currently pending before this Court. United States v. Sharma, et al., 13-20325.
II. ANALYSIS
A. Standard of Review
The relators contend that the district court erred in granting the Government’s motion for partial summary judgment. This Court reviews a district court’s ruling on summary judgment de novo, applying the same standard as the district court. See, e.g., Hirras v. Nat’l R.R. Passenger Corp., 95 F.3d 396, 399 (5th Cir.1996). Summary judgment is proper if the record reflects “that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(c).
B. FCA Alternate Remedy
The FCA makes liable any person who presents the Government with false or fraudulent claims for payment or approval. 31 U.S.C. § 3729. Section 3730(a) provides that the “Attorney General may bring a civil action under this section against the person” who violates § 3729. Section 3730(b), the qui tam provision, provides that a “person may bring a civil action for a violation of section 3729 for the person and for the United States Government.” § 3730(b).[2] “Notwithstanding subsection (b), the Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty.” § 3730(c)(5). Further, “[i]f any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section.” Id.
*161 The issue briefed on this interlocutory appeal is a narrow one, and it is one of first impression in this circuit. The district court held that because the relators filed their qui tam action after the Government had begun to criminally prosecute the defendants, the criminal proceeding was not an “alternate remedy” in which the relators could exercise their rights to recovery. § 3730(c)(5).[3] In other words, the district court held that the “filing of a valid qui tam action is a prerequisite to the operation of the ‘alternate remedy’ provision.” Op. at 163. Here, when the Government pursued the criminal charges, there was no qui tam action pending, and thus, the court reasoned that the criminal proceedings could not be deemed an “alternate remedy” under § 3730(c)(5) because a “criminal action cannot be an alternative to an action that does not exist.” Id.
We must determine whether the district court properly construed the FCA to require a pending qui tam action in order for another proceeding to constitute an alternate remedy.[4] “When courts interpret statutes, the initial inquiry is the language of the statute itself.” Hightower v. Texas Hosp. Ass’n, 65 F.3d 443, 448 (5th Cir.1995). This Court looks at the “language of the statute as well as the design, object and policy in determining the plain meaning of a statute.” Id. Additionally, the “statute must be read as a whole in order to ascertain the meaning of the language in context of the desired goals envisioned by Congress.” Id. We only look to the legislative history if the language is unclear. Id.
We now turn to the language of the statute. As previously set forth, § 3730(c)(5) provides in part that: “Notwithstanding subsection (b), the Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty.” The statute’s reference to subsection (b) is to the provision in § 3730 that allows a private person to file a qui tam action. Thus, this first sentence means that, notwithstanding that a private person has filed a qui tam suit, the Government may elect to pursue an alternate remedy to the qui tam suit. Section 3730(c)(5) further provides that: “If any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section.” Clearly, this language protects the rights of the relators once the Government elects to pursue an alternate remedy and “assumes that the original qui tam action did not continue.” United States ex rel. LaCorte *162 v. Wagner, 185 F.Bd 188, 192 (4th Cir. 1999).
The word “alternate,” as used in this context, is defined as “a choice between two or among more than two objects or courses.” Webster’s Third New International Dictionary (1993) at p. 63. We agree with the district court’s reasoning that for a remedy to be “alternate” to the qui tam proceeding, there must have been two proceedings from which to choose. Accordingly, we hold that the qui tam proceeding must have been in existence at the time of the Government’s election of the alternate remedy.
Although no circuit court has expressly held that a qui tam action must be filed prior to the alternate remedy, we interpret other circuits’ analyses of the alternate remedy provision as implicitly recognizing that a qui tam suit must be filed before there is an alternate remedy. For instance, the Sixth Circuit has addressed the question of whether the district court had properly held that because the Government had not intervened in the qui tam action, the relator was not entitled to a share of the proceeds from the Government’s separate settlement with the defendant. United States ex rel. Bledsoe v. Comm. Health Sys., 342 F.3d 634, 647 (6th Cir.2003). The relator contended that the separate settlement constituted an alternate remedy under the FCA. Id. The Sixth Circuit opined that the “answer turns on the proper definition of ‘alternate remedy,’ either as an alternative to judicial enforcement of the FCA once the government has intervened in a qui tam suit, or an alternative to intervening in the qui tam suit entirely.” Id. The way the Sixth Circuit framed the issue arguably presumes that a qui tam action is pending. Even if the framed issue does not necessarily presume a pending qui tam action, the Court’s ultimate holding implicitly does. The Sixth Circuit held that a “settlement pursued by the government in lieu of intervening in a qui tam action asserting the same FCA claims constitutes an ‘alternate remedy’ for purposes of 31 U.S.C. § 3730(c)(5).” Id. at 649 (emphasis added). See also United States ex rel. LaCorte v. Wagner, 185 F.3d 188, 190 (4th Cir.1999)[5] (opining that the alternate remedy provision “simply preserves the rights of the original qui tam plaintiffs when the government resorts to an alternate remedy in place of the original action”) (emphasis added); United States ex rel. Barajas v. Northrop Corp., 258 F.3d 1004, 1010 (9th Cir.2001)[6] (describing an “alternate remedy under § 3730(c)(5) [as] a remedy achieved through the government’s pursuit of a claim after it has chosen not to intervene in a qui tam relator’s FCA action”) (emphasis added).[7]
*163 Nevertheless, the relators argue that our holding “would completely eviscerate the FCA by allowing the government to sidestep putative relators by racing to beat them to the courthouse through initiating related criminal or other actions as soon as a putative relator voluntarily discloses fraud to the government before filing suit, as required by Section 3730(e)(4)(B).” We are not persuaded that our holding would allow such a scenario. The relators are correct that § 3730(e)(4)(B) provides that “ ‘original source’ means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action.” However, we have explained that this disclosure requirement is satisfied when, as directed by § 3730(b)(2), a relator serves the Government with a “copy of the [qui tam] complaint and written disclosure of substantially all material evidence and information the person possesses.” United States ex rel. Reagan v. East Tex. Med. Ctr. Reg’l Healthcare Sys., 384 F.3d 168, 175 (5th Cir.2004). Further, the FCA requires that the complaint be filed in camera and remain under seal for 60 days before being served on the defendant or until the court orders service. § 3730(b)(2). This procedure allows the Government 60 days after it receives the information to determine whether to intervene in the qui tam proceeding. Id. Accordingly, the FCA’s procedures require the relator to disclose his information to the Government at the time the qui tam complaint is filed in camera. At that point, there would be an existing qui tam action and therefore, if the Government elects to pursue the case in another proceeding, it would be an alternate remedy. No rush to the courthouse would ensue.[8] Indeed, the FCA’s procedures set forth above protect the relator’s rights to the qui tam action and the Government’s right to decide whether to intervene in the action. We hold that the FCA requires that a qui tam proceeding must have been in existence at the time of the Government’s election of the alternate remedy.
III. CONCLUSION
For the above reasons, the district court’s partial summary judgment is AFFIRMED, and the case is REMANDED for further proceedings.

. The State of Texas is not a party to this appeal.

. "Qui tam is short for ‘qui tam pro domino rege quam pro se ipso in hac parte sequitur,' which means ‘who pursues this action on our Lord the King's behalf as well as his own.’ ” Rockwell Intern. Corp. v. United States, 549 U.S. 457, 463 n. 2, 127 S.Ct. 1397, 167 L.Ed.2d 190 (2007).

. The district court expressly stated that it “need not decide the precise moment at which the United States ‘elected’ to pursue the criminal action. Since the indictment was obtained on July 16, 2009, the court is satisfied that the United States ‘elected’ to pursue the criminal action well before the qui tam complaint was filed” on November 17, 2011. Op. at 163 n. 8.

. To be clear, we are not deciding the issue of whether a criminal proceeding may constitute an "alternate remedy” under § 3730(c)(5). Compare United States v. Bisig, No. 02-112, 2005 WL 3532554 (S.D.Ind. Dec. 21, 2005) (holding that a criminal proceeding could constitute an alternate remedy under the FCA), with United States v. Lustman, No. 05-40082, 2006 WL 1207145 (S.D.Ill. May 4, 2006) (holding that the relators could not intervene in a concurrent criminal case because it ruled that a criminal proceeding was not an "alternate remedy” under the FCA). We are assuming arguendo for purposes of this appeal that such a proceeding would constitute an alternate remedy under the statute. We note that the district court did not reach that issue, and the parties on appeal have not briefed that issue.

. In LaCorte, the relevant issue on appeal was whether the alternate remedy provision created an exception to the statutory bar against allowing private parties intervening in a qui tam action. 185 F.3d at 191-92.

. In Barajas, the principal issue on appeal was whether an administrative proceeding with respect to suspending or debarring a government contractor could constitute an alternate remedy under the FCA. 258 F.3d at 1005.

. The relators assert that they satisfied the only statutory requirement governing when a qui tam complaint must be filed. We agree; however, this assertion misses the point. The issue is not whether the qui tam suit was timely filed. Instead, the issue is whether the restitution proceedings constitute an alternate remedy. It is undisputed that the relators filed this qui tam action inside the applicable six-year statute of limitations. See § 3731(b)(1). The relators have filed a valid qui tam action. The disposition of this interlocutory appeal from the partial summary judgment does not invalidate the qui tam action; this appeal only determines whether the restitution proceedings constitute an alternate remedy. Here, it is undisputed by the district *163 court and the Government that the qui tam suit may proceed at the conclusion of this interlocutory appeal. The relators alternatively argue that if there is an additional time limitation, the relators have satisfied it because they filed the qui tam action prior to the alternate remedy becoming final. Because we hold that the qui tam action must be filed prior to the commencement of the alternate remedy proceeding, we need not reach this argument.

. In any event, the scenario of the Government rushing to file suit ahead of the qui tam relators is certainly not what happened in the instant case. Here, the criminal defendants were indicted in 2009, pleaded guilty in 2010, and the initial restitution was awarded in February of 2011. The relators did not file the instant qui tam complaint until November of 2011. Cf. Webster v. United States, 217 F.3d 843 (table), 2000 WL 962249, at *2 (4th Cir.2000) (unpublished) ("Requiring a qui tam plaintiff to make some effort to prosecute her suit in order to participate in any ultimate recovery results in neither unfairness nor the frustration of congressional policy.”).